FILED

MAY 20 2020

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____ kur _____,DEPUTY

To: The Federal Judge Presiding in the Court that Has Jurisdiction of the Federal District that Encompasses Caddo County in the State of Oklahoma. The Honorable Stephen P. Friot W. District OK.

From: Billie Wix Russell VI ADC#137378
         DOB: ████/1986
         SSN: ████-5525

CIV-20-469-F

         Caddo County Detention Center ID# 020416
         I-POD
         201. West Oklahoma Street
         Anadarko, OK. 73005
         In Custody of Spencer Davis (Sheriff of Caddo County)
   I am filing this writ of Habeas Corpus application, Pro Se, pursuant to 28USC§2241.
I was convicted in Benton County Arkansas and sentenced, by order of judgement, to serve a term of imprisonment in the Arkansas Dept. of Corrections on September 28th, 2006; a sentence for which I have yet to discharge. I am including a copy of the Warrant issued by the Arkansas Board of Parole issued on February 5th, 2020, which was served to me by the Caddo County Detention Center on the same day, as well as a Waiver of Extradition For Probation + Parole, signed by Myself and Parole/Probation Officer Mr. Craig Foreman on December 18, 2019. Absent an Order of Judgement, I offer these documents to the Court and pray that they suffice as evidence of

aforementioned judgement by Benton County in the State of Arkansas. 28 U.S.C. § 2241(d) grants equal jurisdiction to the sentencing state's District Court as well as the District Court of which the applicant is in custody, at the Federal level.

The conditions of confinement in the Caddo County Detention Center are unconstitutional (1st, 5th, 8th & 14th Amendment violations: No news media, no due process for institutional infractions or Ad. Seg., no dimming of lights, no soap, food prepared w/o masks, no sanitizing, weekend committs come + go and are housed in Gen. Pop.)

I was arrested and charged with Agg. Drug Traf. and Conspiracy to ADT on Jan. 20, 2020. I appeared before the District Court of Caddo County on January 31st, 2020 for an Initial Appearance Hearing. The Magistrate, then advised me of my rights, the nature and purpose of a Preliminary Hearing and that a bond would be set. Upon recommendation by Assistant District Attorney, Mrs. Amanda Self, the Court set a bond of $500,000.00 and ordered that I reappear before the District Court of Caddo County on March 19th, 2020 at 9:00am. It also ordered that I not consume alcohol or other intoxicants. On March 13th 2020 the President of the United States declared a national state of emergency, in response to the worldwide COVID-19 (coronavirus) global pandemic. By order of the Supreme Court on March 16th, 2020 the Preliminary Hearing Conference was rescheduled to April 16th, 2020. Again on April 2nd, 2020, by order of the Supreme Court, the Preliminary Hearing Conference was rescheduled to June 26th, 2020. It was explained to me that "A preliminary hearing is a

hearing before a judge, without a jury, for the purpose of the State establishing that there is sufficient evidence to show that a crime has been committed and reasonable and probable cause to believe you committed that crime. It is not a hearing to determine your guilt or innocence, which is reserved for trial. Should the Court bind you over after your preliminary hearing, then you would be ordered to stand trial and thereafter appear for arraignment and to enter your plea.", and I responded to this explaination, on Jan. 21st, 2020, that I understood the nature and purpose of the Preliminary Hearing. At no time have I elected to waive or forego a Preliminary Hearing of that nature and purpose. As of today, May 15th of 2020, more than fifty (50+) days have passed since the original scheduled appearance for the Preliminary Hearing Conference — more than one hundred (100+) days have passed since I was ordered to appear originally. It is reasonable to conclude that; with the current unprecedented circumstances in place regarding the judicial system as a whole, and that no societal abatement to the COVID-19 pandemic is anticipated, much less expected, any time soon; the Preliminary Hearing may never take place. In that conclusion, the State will never be able to establish that there is sufficient evidence to show that: ① a crime has been committed, ② there is reasonable and probable cause to believe that I committed that crime, ③ + to

bind me over after the Preliminary Hearing, then ordered to stand trial and still then after appear for arraignment and enter my own plea, should the court make that physically binding determination. I am in an indefinate, unending, and perpetual limbo. I am including the original Initial appearance court minute and the most recently rescheduled order court minute, that I pray the court may accept as evidence of the aforementioned facts. Were I to be released on my own recognance, reasonable assurances can be made that I will adhear to the two court oders of the Caddo County court. The first order in place is that I not drink alcohol or consume any intoxicant. The second order is that I reappear for the Preliminary Hearing Conference and subsequent Preliminary Hearing, whenever that may take place, now scheduled still more than a month away. Adhearance to these two Court orders is almost guarenteed so long as I were to remain in custody in Arkansas, which will happen after having been extradited pending the disposition of the Parole Violation Charge issued by the Arkansas Board of Parole. Were, at some point, the Arkansas Board of Parole to reconsider my conditional release, I would be subject to those then imposed conditions. Such conditions could be: electronic and telephonic home confinement, unlimited office or phone reporting, unlimited substance use screenings (U.A.), community service,

attendance of self-help meetings (A.A./N.A./etc.), sanctions of various degrees including jail time, or completion of any number of state approved programs. I would remain either incarcerated in the Arkansas Department of Corrections custody or would be conditionally released until discharge of the original 2006 sentence; which as of now, is sometime in the year 2032. Were that time in 2032 to come; and Caddo County Court then still not have been able to hold the indefinately rescheduled Preliminary Hearing in order to determine at that time, some twelve (12) years from now, and require the State to show sufficient evidence, provided by the State of Oklahoma, that there is reasonable and probable cause to believe that I committed a crime and then bind me over after that Hearing, for trial by Order of the Court; it is reasonable to conclude that all parties involved will then have far bigger problems to worry about than me not appearing at a Preliminary Hearing, which in fact, might not ever take place. Further emphasis for my release on own recognizance or other injunctive relief sought in this application is the consideration of my well being while incarcerated. The Caddo County Detention Center is deliberately indifferent to, not only my health, but that of every inmate. Whereas recent caselaw found on the law library, my only means of accessing information and ideas as the facility is entirely "news media free", shows that the majority, if not all, of other institutions

jails, prisons, etc. in this country are responding to the serious health risks regarding COVID-19 by furthering safety measures in at least simple ways such as providing soap at no cost, providing more soap more often, educating inmates on safety regarding CDC guidelines by granting them access to such guidelines, and adopting policies and procedures that are meant to provide sanitation above and beyond those normally in place in a suitable institution. The Caddo County Detention Center has recently stopped providing soap at all. I have soap because I recieved it in an order submitted and paid for by my family from a commisary distributer that contracts with the facility. I have asked for "state soap" verbally from various officers including supervisers, and electronically in a request on the kiosk. The response is always "ok" but noone has provided me soap in more than ten (10) days. Even the jail administrater Mrs. Tavia Toles told me "ok" on the kiosk, yet did not provide me with soap, nor did she, to my knowledge, advise a subordinate that they should bring me soap. The officers wear mask intermittedly, never in the hallways. Trustees prepare food with no mask, nor do they have masks at all. There are no regular or routine sanitation practices beyond a broom, dust pan, mop, and 1 bottle of highly diluted cleaner made available twice a day, in Gen. Pop., none in Ad. Seg. No Personal protective equipment is provided and general population inmates

are responsible for the sanitation duties using these limited resources to clean all living, sleeping, and restroom areas, all tables and seats where we eat, all phones and foodports. Nothing has changed to prevent danger or death from the COVID-19 outbreak except that some officers wear masks some of the time. New intake inmates are not screened in any way, nor are they delayed from entering general population more than the usual time of a couple of days, not more than five (5). The Benton County Jail in Arkansas and the Arkansas Department of Corrections both provide a more safe environment than my current circumstance. I have no documentation on which to rely as evidence of the fact that all request, grievances, and other administrative measures of seeking relief in this health emergency have been exhausted. Paper grievances never get returned, nor will the officers print copies of electronically filed grievances. Having submitted an electronic grievance four (4) weeks ago complaining about the common practice of removing inmate's clothing throughout the entire facility at the same time, what was referred to by staff as "Butt naked Monday", the response from the Undersheriff Mr. Delbert Stalling was " " - a period symbol. I was placed on Admin. Segregation for three (3) weeks immediately after the submission of that grievance. I recieved no due process proceedings for the Ad. Seg.

reclassification. Although having endured punitive conditions for that time, I continue to submit paper grievances, electronic grievances, informal and formal requests to officers and medical staff in a desperate effort to seek relief. Suffice it to say that I have exhausted administrative measures. Citing the Supreme Court in Valentine v. Collier (2020) "Further, where plaintiffs demonstrate that a prison grievance system cannot or will not respond to an inmate's complaint, they could well satisfy an exception to the PLRA's exhaustion requirement. Finally, while States and prisons retain discretion in how they respond to health emergencies, federal courts do have an obligation to ensure that prisons are not deliberately indifferent in the face of danger and death".

I have been diagnosed with high-blood pressure and perscribed Lisinopril to manage this condition. I also take sirtralin for depression. I'm 5'8 and weigh 241 lbs. I can not practice "social distancing" because, honestly I don't even know what that is beyond having read caselaw about Covid-19, I can't even recieve the newspaper "books that we give out & Bibles is all you can get" according to the Undersheriff. As I was writing, right now at "7pm May 15th, 2020, mr. Palmer, a Pm shift Superviser that has worked here twelve (12) years, walked by me, while facing me, within two (2) feet, without a mask on while conducting "count time". There is a camera in IPOD that should have recorded this glaringly deliberate indifference. Hypertension (High Blood Pressure) has the highest rate of Comorbidity with COVID-19. I believe that the conditions of the Caddo County Detention Center

violate my 5th ~~amendment~~ ... ~~medical detainee~~ as the conditions are meant to punish and also, in the capacity of a convicted Arkansas State inmate (parole violater) being held for extradition, my 8th Amendment right as these longstanding ~~practices that further no penological objective do~~ amount to punishment that is cruel and unusual. I believe that I am more likely to contract COVID-19 in this facility than in any other Detention Facility in the United States. I am also of the firm belief, based on my experiences thus far, that were I to contract COVID-19, I would die here. The officers, the administraters, and the Undersheriff and Sheriff all view inmates as subhumans, "your an inmate, you have no rights" is what I have heard on multiple occasions. I have a 14 year old daughter an 8-month old baby boy and another baby girl due September 16th, 2020. My mother is 67 years old and perminately disabled. My family needs me, alive. My residence is at 1712 Sunrise St. Bentonville, Ar. 72712. I have lived there for 23 years. We own the home.

I swear that this letter is true, by penalty of perjury, so help me God.

Billie Wix Russell IV
BW Run IV
May 15th, 2020

I, Billie Wix Russell IV, today May 16th, asked for soap. I was told that "because you have commissary soap, we aren't going to give you soap". Applying this reasoning, because I have commissary food, does that mean the jail will no longer provide me food? Where is the line? Please help me.

I swear this statement is true by penalty of perjury so help me God. BW Run IV May 16th 2020

"Generally, Conditions of confinement claims are brought Pursuant to 8 USC § 1983 see Camacho Lopez V. Lowe, Civ. No. 20-563, 2020 WL689874, at *4-5 (M.D.P.A. Apr. 7, 2020) However, where an individual seeks "immediate or more speedy release" he is asserting a remedy available through a habeus petition. See preiser V. Rodriguez 411 U.S. 475, 494, 1973. Confinement See id. to date the United States Supreme Court has not expressly stated whether a conditions of confinement Claim may be raised through habeus corpus petition. See Ziglar V. Abbasi. 137 S. Ct. 1843 1862-63 (2017) ("[W]e have left open the question whether [individuals] might be able to challenge their confinement conditions via a petition for Writ of Habeus Corpus"); see also Bell V. Wolfish. 411 U.S. 520 526 n. 6 (1979) question of the propriety of using writ of habeus Corpus to obtain review of the conditions of confinement"). Preiser 411 U.S. at 499 (When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeus Corpus will lie to remove the restraints making Custody illegal") However federal Courts of Appeals appear to have contuned such challenges. See Aamer V. Obama 742 F. 3d 1023, 1032 (DC Cir. 2014)", Woodall n. 8 (3d cir. 1978)" (citing Geovani M.O V. Decker (D.N.J. 2020)

   Today, May 17th, 2020, I was placed on "Medical observation" by the assistant jail administrater Mr. Shawn Johnson because, in an act of civil disobedience, I refused four (4) meals (which the jail charges to an inmates accont at a rate of $13.50/day) and chose to eat my own food in front of officers & cameras. I chose this action based on the "commisscry soap theory" presented by the AM supervisor Mrs. Tiffany "Doe" yesterday. I was weighed by medical today I weigh 241 lbs. same as two weeks ago. I accepted the Dinner tray because there was a bar of soap left in

the medical observation cell (behind booking in "JUV" POD). I told mrs. Tiffany why I accepted the tray and said "thank you". While I was taken to medical to be weighed, someone removed the bar of soap from the toilet/sink from my cell. It should be noted that once I was able to recieve my property in the cell prior to recieving the dinner tray, I situated my items and began observing my environment, I discovered a lone razorblade stuck to adhesive on the "side ledge" of a "shelf/towel holder" built into the wall at a highth of six (6) feet a conspicuos and eye level area. Hard to fathom the possibility that the officers failed to remove the razor prior to placing me in the cell to begin with, but to inform the officer, after having returned from medical and I had the notion to be forthcoming I said "I found a razor up there and flushed it because I didnt want that in my cell since Im on medical observation" He said "your probably gonna have allyour stuff searched since you told me you got a razor in here" I said "come on". He said "I cant alone, find anything else hold it up to the camera before you flush it so we know what your doing". I purposely abstain from any and all deviant conduct in order to exemplify my case with exemplary behavior. The facitious, malicious, oppressive, and unprofessional conduct is offensive to my intelligence. All I know to do is to try to get help formyself from the Federal District Court of Western Oklahoma and to pray for relief. I hope this letter is recieved by you soon. Please forgive any errors and consider the merits as liberally as ethically and legally possible. I swear by penalty of purjury, to the best of my knowledge and limited legal ability that all content in this letter is true, honest and relative to my unique circumstances, so help me God.          Billie Wix Russell
                    BW Russell
                    May 17th, 2020